307 Ga. 778
FINAL COPY

S19G0125. WILLIAMS v. THE STATE.

BLACKWELL, Justice.

On January 23, 2013, the police searched Keith Williams's residence and seized several computers and disk drives containing digital images of child pornography. A Gwinnett County grand jury indicted Williams on 48 counts of sexual exploitation of children under OCGA § 16-12-100 (b) (8).[1] All counts in the indictment alleged that, on the day of the search, Williams "did knowingly possess and control a photographic image depicting a minor engaged in sexually explicit conduct." Each count separately described a different image possessed by Williams.

Before trial, Williams filed a "Motion to Dismiss Counts 2 through 48 of the Indictment" on the ground that these counts were

---

[1] The statute provides: "It is unlawful for any person knowingly to possess or control any material which depicts a minor or a portion of a minor's body engaged in any sexually explicit conduct." OCGA § 16-12-100 (b) (8).

"multiplicitous" because they all arose from a single criminal act. According to Williams, the simultaneous possession of multiple illicit images in a single location constitutes only one offense under OCGA § 16-12-100 (b) (8). Thus, Williams argued, the indictment subjected him to multiple punishments for the same offense, thereby exposing him to double jeopardy in violation of the United States Constitution, the Georgia Constitution, and statutory law.[2] After a hearing, the trial court agreed with Williams, granted his motion to dismiss, and ordered the State to consolidate all 48 counts in the indictment into a single count. The State appealed,[3] and the Court

[2] See U. S. Const. Amend. V (no person shall be "subject for the same offence to be twice put in jeopardy of life or limb"); Ga. Const. of 1983, Art. I, Sec. I, Par. XVIII ("No person shall be put in jeopardy of life or liberty more than once for the same offense except when a new trial has been granted after conviction or in case of mistrial."); OCGA § 16-1-7 (setting forth the circumstances under which the accused may be prosecuted or convicted separately for multiple crimes arising out of the same conduct); OCGA § 16-1-8 (setting forth the effects of a "former prosecution").

[3] In criminal cases, the State is allowed to appeal only from certain specified orders, including orders "setting aside or dismissing any indictment . . . or any count thereof[.]" OCGA § 5-7-1 (a) (1). The trial court's order states: "[T]he Court hereby GRANTS Defendant's Motion [to Dismiss] and orders that the state consolidate the counts in the indictment into one single count. Should the state fail to so consolidate, the Court *may dismiss* counts 2-48 of the indictment." (Emphasis supplied.) Although this order

2

of Appeals reversed, holding that OCGA § 16-12-100 (b) (8) allows "a charge and conviction on each and every image possessed." State v. Williams, 347 Ga. App. 183, 183-184 (818 SE2d 256) (2018). We granted certiorari and now affirm the Court of Appeals's decision, but for an entirely different reason. We hold that, regardless of the merit of Williams's multiplicity claim, the trial court was not authorized to dismiss Counts 2 through 48 of his indictment at the pretrial stage of the proceedings.

1. The trial court's dismissal order was premised on the notion that the alleged multiplicity of Williams's indictment violated his right not to be exposed to double jeopardy. The doctrine of double jeopardy has two components: the "procedural" bar on double jeopardy, which places limitations on "multiple prosecutions for crimes arising from the same conduct," and the "substantive" bar,

contains conditional language — "may dismiss" — we construe this order as a de facto dismissal of 47 separate counts of the indictment. The order unambiguously "grants" Williams's motion to dismiss. The additional language about consolidation and potential dismissal, in our view, was simply meant to give the State an opportunity to amend Count 1 of the indictment to include all of the separate illicit images specified in the other counts.

3

which protects against "multiple convictions or punishments" for such crimes. Stephens v. Hopper, 241 Ga. 596, 598-599 (1) (247 SE2d 92) (1978); Keener v. State, 238 Ga. 7, 8 (230 SE2d 846) (1976). See also Carman v. State, 304 Ga. 21, 26 (2) n.3 (815 SE2d 860) (2018). When a court is "presented with the question of whether a single course of conduct can result in multiple convictions and sentences under the same statute, the doctrine of substantive double jeopardy is implicated, and the 'unit of prosecution,' or the precise act criminalized by the statute, must be identified." Coates v. State, 304 Ga. 329, 330 (818 SE2d 622) (2018). See also State v. Marlowe, 277 Ga. 383, 383 (1) (589 SE2d 69) (2003) ("The question of multiple punishments (as opposed to multiple *prosecutions*) for the same criminal conduct is addressed under the rubric of substantive double jeopardy." (Emphasis in original)).

Williams argues that his multiplicity claim invokes the *procedural* aspect of double jeopardy, but this clearly is not the case. Procedural protections against double jeopardy apply only to "multiple prosecutions," meaning multiple or successive indictments

4

or criminal proceedings. See <u>Stephens</u>, 241 Ga. at 599 (1). These procedural protections do not apply to a single indictment that contains multiple counts, even if those counts are deemed multiplicitous. See <u>Prater v. State</u>, 273 Ga. 477, 481 (4) (545 SE2d 864) (2001) ("[P]rocedural Double Jeopardy protections . . . forbid the State from prosecuting in a second action crimes that were omitted from the first prosecution."); <u>Keener</u>, 238 Ga. at 8 (the procedural aspect of double jeopardy refers to the bar on "successive prosecutions," and its rationale is "to prevent harassment of the accused"). See also <u>United States v. Rosenthal</u>, 793 F2d 1214, 1234 (11th Cir. 1986) (a defendant "is subjected to multiple prosecutions in violation of the double jeopardy clause" where "a single offense is charged in *separate charging instruments*" (emphasis supplied)). Because Williams is not faced with multiple or successive prosecutions, the procedural bar on double jeopardy does not apply.[4]

---

[4] Indeed, the U. S. Supreme Court has squarely rejected an argument that a single indictment with multiple counts can be characterized as multiple prosecutions for federal double jeopardy purposes. See <u>Ohio v. Johnson</u>, 467 U. S. 493, 500-502 (104 SCt 2536, 81 LE2d 425) (1984) (holding that defendant's

5

Rather, to the extent double jeopardy provisions apply at all, Williams's claim must be analyzed under the rubric of substantive double jeopardy, which prohibits multiple punishments for the same offense. See Coates, 304 Ga. at 330; Marlowe, 277 Ga. at 383 (1).

The substantive bar on double jeopardy, however, is of no help to Williams at this stage of the proceedings because he has not yet been convicted and sentenced on any of the counts that he claims are multiplicitous. We have made clear that the doctrine of substantive double jeopardy — concerned as it is with multiple *convictions* and *sentences* — does not come into play until *after* the defendant has been found guilty on multiplicitous counts. See Keener, 238 Ga. at 8 (where "several crimes arising out of one criminal transaction are tried at the same time," the bar against multiple convictions "does not operate until after the verdicts"). See also Perkins v. State, 279 Ga. 506, 507 (1) (614 SE2d 92) (2005) (addressing a procedural double jeopardy issue in a pretrial appeal

plea of guilty to two counts of a multiple-count indictment did not prevent the state from prosecuting the remaining counts, as all counts "were embraced within a single prosecution").

6

and stating that "[a]ny issues of substantive double jeopardy that may arise if [defendant] is convicted in superior court are not properly before us today"); State v. Boyer, 270 Ga. 701, 703-704 (2) (512 SE2d 605) (1999) (explaining that, just because a defendant "may not be *sentenced* for more than one crime based on the same criminal act does not mean that the State must choose to charge her with only a single crime" (emphasis in original)).

The post-trial nature of substantive double jeopardy protections is further evidenced by our longstanding practice of "merger," in which courts merge multiple counts into one for sentencing purposes. As we recently explained, "merger" applies generally to "situations in which a defendant is prosecuted for and determined by trial or plea to be guilty of multiple criminal charges but then, as a matter of substantive double jeopardy law, can be punished — convicted and sentenced — for only one of those crimes." Scott v. State, 306 Ga. 507 (2) (832 SE2d 426) (2019). We routinely resolve merger issues on direct appeal, *after* the defendant's conviction and sentencing. See, e.g., Donaldson v. State, 302 Ga.

671, 674 (4) (808 SE2d 720) (2017) (the "two aggravated assault counts," which were based on a single shooting incident, "both should have merged into felony murder for sentencing purposes"); Nazario v. State, 293 Ga. 480, 491-492 (3) (d) (746 SE2d 109) (2013) (holding that defendant's five convictions for concealing the death of another "merged into one" because defendant's course of conduct constituted only one violation of the applicable statute). Because the substantive bar on double jeopardy applies only after the defendant is found guilty, it does not warrant the pretrial dismissal of the charges against Williams, even if those charges are multiplicitous.[5]

---

[5] Williams insists that a multiplicitous indictment causes harm *before* conviction and sentencing because, first, it exaggerates the scope and gravity of the alleged criminal activity in the eyes of the jury, see United States v. Smith, 231 F3d 800, 815 (III) (C) (11th Cir. 2000) ("[A] multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes—not one."), and second, it may induce the jury to reach an unwarranted compromise and acquit on less than all counts despite lingering doubt. But Williams does not cite any Georgia authority that would allow pretrial dismissal of charges based on those concerns. In fact, such concerns are present in every case in which the prosecution charges several distinct counts based on the same criminal conduct and where one or more of those counts are subject to merger for sentencing purposes. Were we to allow a pretrial dismissal of multiplicitous charges based on those concerns, our decision would contradict not only Georgia's longstanding practice of merger at the sentencing phase, but also the applicable double jeopardy provisions of the Georgia Code. See OCGA § 16-1-7 (a) (when "the same conduct of an

Williams relies heavily on the United States Supreme Court's decision in United States v. Universal C. I. T. Credit Corp., 344 U. S. 218 (73 SCt 227, 97 LEd 260) (1952), which involves a *pretrial* "unit of prosecution" analysis. This case, he contends, refutes any suggestion that the trial court lacked authority to consolidate or dismiss the multiplicitous charges. But Universal C. I. T. is inapposite because it is fundamentally about the statutory interpretation of the federal Fair Labor Standards Act; nowhere does it suggest that the Double Jeopardy Clause prohibits a trial on a multiplicitous indictment. See id. at 226 ("All we now decide is that the district judge correctly held that a single course of conduct does not constitute more than one offense under § 15 of the Fair Labor Standards Act."). Indeed, the Supreme Court observed that "a

accused may establish the commission of more than one crime, the accused may be *prosecuted for each crime*[,]" but may not be "*convicted* of more than one crime" under certain circumstances (emphasis supplied)); OCGA § 16-1-7 (b) ("If the several crimes arising from the same conduct are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, *they must be prosecuted in a single prosecution . . . .*" (emphasis supplied)).

draftsman of an indictment may charge crime in a variety of forms to avoid fatal variance of the evidence" and "may cast the indictment in several counts whether the body of facts upon which the indictment is based gives rise to only one criminal offense or to more than one." Id. at 225. And, "by an indictment of multiple counts the prosecutor gives the necessary notice and does not do the less so because at the conclusion of the Government's case the defendant may insist that all the counts are merely variants of a single offense." Id. See also Ohio v. Johnson, 467 U.S. 493, 500 (104 SCt 2536, 81 LE2d 425) (1984) ("While the Double Jeopardy Clause may protect a defendant against cumulative punishments for convictions on the same offense, the Clause does not prohibit the State from prosecuting respondent for such multiple offenses in a single prosecution.").

2. Williams also asserts that his motion to dismiss was in the nature of a pretrial "special demurrer" which, he argues, is the proper vehicle for challenging an indictment based on multiplicity. We disagree. A special demurrer is a pretrial remedy that allows the

defendant to challenge the *form* of the indictment (as opposed to its substance) and to seek greater specificity or more information about the charges. See Kimbrough v. State, 300 Ga. 878, 880-881 (2) (799 SE2d 229) (2017) ("By filing a special demurrer, the accused claims . . . that the charge is imperfect as to form or that the accused is entitled to more information." (Citation and punctuation omitted)); State v. Wyatt, 295 Ga. 257, 260 (2) (759 SE2d 500) (2014) (a special demurrer "challenges the specificity of the indictment"); Jones v. State, 289 Ga. 111, 115 (2) (c) (709 SE2d 773) (2011) ("A defendant is entitled to be tried on a perfect indictment and may file a special demurrer seeking greater specificity or additional information concerning the charges contained in the indictment."). See also Kimbrough, 300 Ga. at 881 (2) n.12 (analogizing the special demurrer to a "motion for a more definite statement" in civil cases).[6]

---

[6] By contrast, a *general* demurrer challenges the *substance* of the indictment and asserts that the indictment is "fatally defective and incapable of supporting a conviction." Kimbrough, 300 Ga. at 881 (2) (citation and punctuation omitted). A general demurrer would be warranted if the defendant "could admit each and every fact alleged in the indictment and still be innocent of any crime." Id. at 880 (2). Williams does not contend that his indictment is

11

A special demurrer, with its demand for greater specificity, may be used to address *procedural* double jeopardy concerns, given that a vague or ambiguous charge, if carried through trial, may not sufficiently inform the defendant of the specific crime of which he was acquitted or convicted. See State v. English, 276 Ga. 343, 346 (2) (a) (578 SE2d 413) (2003) (to survive a special demurrer, an indictment must lay out the charges in such a way that, "in case any other proceedings are taken against [defendant] for a similar offense," the record would show "with accuracy to what extent he may plead a former acquittal or conviction" (citation and punctuation omitted)); Green v. State, 292 Ga. 451, 452 (738 SE2d 582) (2013) ("The purpose of an indictment is to inform the accused of the charges against him and to protect the accused against

subject to a general demurrer, and we believe any such claim would be meritless. See id. ("If . . . the admission of the facts alleged would lead necessarily to the conclusion that the accused is guilty of a crime, the indictment is sufficient to withstand a general demurrer."). See also State v. Mondor, 306 Ga. 338, 341 (1) (830 SE2d 206) (2019) (an indictment is sufficient to withstand a general demurrer if it "recite[s] the language of the statute that sets out all the elements of the offense charged" or "allege[s] the facts necessary to establish violation of a criminal statute" (citations and punctuation omitted)).

12

*another prosecution for the same offense.*" (Emphasis supplied.)). See

also <u>Sanabria v. United States</u>, 437 U.S. 54, 69-70 (II) (B) (98 SCt

2170, 57 LE2d 43) (1978) ("[O]nce Congress has defined a statutory

offense by its prescription of the 'allowable unit of prosecution,' that

prescription determines *the scope of protection afforded by a prior*

*conviction or acquittal.*" (Citations omitted; emphasis supplied)).

But we have never held that a special demurrer may be used

to address *substantive* double jeopardy concerns and obtain a

pretrial dismissal or consolidation of multiple counts simply to

prevent the possibility of multiple convictions and sentences for the

same offense. To the contrary, as discussed above, we have stated

that substantive double jeopardy protections do not come into play

until *after* trial and so cannot form the basis for the pretrial remedy

that Williams has sought.[7] See <u>Boyer</u>, 270 Ga. at 703-704 (2);

---

[7] The only authority Williams cites for the proposition that a special demurrer is the proper vehicle for deciding multiplicity claims is the Court of Appeals's decision in <u>Christian v. State</u>, 288 Ga. App. 546, 548 (2) (654 SE2d 452) (2007), which states that "[i]f a defendant wants greater specificity with regard to the time or circumstances of the alleged crime, *or feels that the indictment is defective as multiplicitous*, her appropriate remedy is a pre-trial

13

Keener, 238 Ga. at 8. See also State v. Tiraboschi, 269 Ga. 812, 813

(504 SE2d 689) (1998) (reversing grant of special demurrer

dismissing a felony murder charge because, "[a]lthough [defendant]

may not properly be sentenced for felony murder and vehicular

homicide, that does not prevent his trial on both charges").[8]

special demurrer that challenges the form of the indictment." (Emphasis supplied.) This statement in Christian, however, is dicta and appears to be an outlier. We are not aware of any of our decisions — or any pre-Christian decisions of the Court of Appeals — that reflect this proposition. Indeed, the only case that Christian cites in support of this proposition appears to hold the exact opposite. See Martin v. State, 189 Ga. App. 483, 496 (10) (376 SE2d 888) (1988) (appellants failed properly to raise a challenge to a multiplicitous indictment because they appealed "only the overruling of their [pretrial] motions to quash the indictments," whereas the "operative error here is in the *conviction* and *sentencing* of [defendants] for the same conduct twice" (emphasis in original)). Thus, to the extent Christian and its progeny (see State v. Thomas, 331 Ga. App. 220, 222 n.10 (770 SE2d 301) (2015)) suggest that a special demurrer may be used to challenge an otherwise "perfect" indictment on grounds of substantive double jeopardy, they are disapproved.

[8] This is not to say categorically than no indictment characterized as multiplicitous is ever subject to dismissal via a special demurrer. It is possible that such an indictment may lack the requisite specificity. If, for instance, an indictment contains multiple counts that are entirely identical, with nothing to distinguish them from each other, the indictment would not inform the defendant of what he should be prepared to meet or why the government chose to use multiple identical counts rather than one. See State v. Meeks, 309 Ga. App. 855, 859 (2) (711 SE2d 403) (2011) (affirming grant of special demurrer on a count that was "entirely duplicative" of another count and provided "no additional facts by which it [could] be distinguished from that count"); Smith v. State, 282 Ga. App. 339, 341 (1) (638 SE2d 791) (2006) (defendant could have filed a special demurrer if he wanted "greater specificity" with regard to two

14

In this light, the Court of Appeals erred when it based its decision on the merits of Williams's multiplicity claim. In doing so at this pretrial stage of the proceedings, the Court of Appeals implied that a meritorious multiplicity claim would justify the dismissal of Counts 2 through 48. This implication is erroneous, as it effectively creates a new rule of criminal procedure — a rule that allows pretrial dismissal of multiplicitous counts on the ground of substantive double jeopardy. Such a rule is nowhere to be found in the Georgia Code or in our own jurisprudence.[9] Instead of addressing Williams's claim on the merits, the Court of Appeals should have reversed the trial court's order on the ground that the trial court lacked authority to dismiss or consolidate Counts 2 through 48 of Williams's indictment before trial. Nevertheless, the underlying

counts that allegedly charged identical crimes and "were insufficiently differentiated"). The motion to dismiss that Williams filed below, however, did not assert that any of the counts in his indictment were insufficiently specific.

[9] We note that the Federal Rules of Criminal Procedure require a defendant to raise a multiplicity claim in a pretrial motion "if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." Fed. R. Crim. P. 12 (b) (3). No such rule exists in Georgia.

15

judgment of the Court of Appeals that reverses the trial court's order is correct, and we "will affirm the judgment of a lower court so long as it is right for any reason, even if it is based upon erroneous reasoning." Shadix v. Carroll County, 274 Ga. 560, 564 (3) (c) (554 SE2d 465) (2001).[10]

Judgment affirmed. All the Justices concur.

DECIDED JANUARY 27, 2020.
Certiorari to the Court of Appeals of Georgia — 347 Ga. App. 183.
*L. David Wolfe, Bingzi Hu*, for appellant.
*Daniel J. Porter, District Attorney, Samuel R. d'Entremont, Assistant District Attorney*, for appellee.

---

[10] We granted certiorari to answer a difficult question about the proper unit of prosecution for possession of child pornography under OCGA § 16-12-100 (b) (8). Because we conclude that this difficult question is not yet ripe for resolution in this case, we have no occasion to answer it today. The Court of Appeals also should not have attempted to resolve the question, and its opinion in this case should not be relied on as precedent.

16